912 F.2d 628
 James C. MELO, Jr., Louise Jurik, Donald Ruggerio, Karol
Danowitz, James Dicosimo, Lucille Russell, Walter
W. Speelman, John Weikel, Appellants,
v.
Barbara HAFER and James J. WEST.
Carl GURLEY, W. Gerard Best, Michael Brennan, Margaret
Casper, Elizabeth Buchmiller, Daniel Clemson, Mary
Fager, George A. Franklin, Jr., Appellants,
v.
Barbara HAFER.
 Nos. 89-1924, 89-1925.
 United States Court of Appeals,
Third Circuit.
 Argued March 16, 1990.
Decided Aug. 21, 1990.
Rehearing and Rehearing In Banc Denied Sept. 21, 1990.
 
 William Goldstein (Argued), Groen, Laveson, Goldberg, Rubenstone & Flager, Bensalem, Pa., for appellants.
 Jerome R. Richter (Argued), Goncer M. Krestal, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee, Barbara Hafer.
 Michael M. Baylson, U.S. Atty., Stuart M. Gerson, David F. McComb, Asst. U.S. Attys., Philadelphia, Pa., Barbara L. Herwig, Peter R. Maier (Argued), Appellate Staff, Civ.Div., Dept. of Justice, Washington, D.C., for appellee, James J. West.
 Before SLOVITER, BECKER and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Introduction
 
 1
 This is an appeal from the district court's dismissal of two civil rights actions. In the action with Carl Gurley as the lead plaintiff, eight terminated employees assert a claim under 42 U.S.C. Sec. 1983 alleging that their discharge by Barbara Hafer, the Auditor General of Pennsylvania, was political and therefore violated their due process and First Amendment rights. In the action with James C. Melo as the lead plaintiff, eight other terminated employees, who similarly allege a violation of their civil rights by Hafer, further allege that Hafer and James West, the acting United States Attorney for the Middle District of Pennsylvania, conspired to deprive them of their civil rights. The Melo plaintiffs also assert state law claims against West.
 
 
 2
 This appeal requires us to consider whether a claim for monetary relief brought under 42 U.S.C. Sec. 1983 may be maintained against a state official in her individual capacity, whether a claim under the same statute may be maintained against a federal official when he is alleged to have conspired with a candidate for state office, and whether a scope of employment certification issued by the government in a claim brought under the Federal Tort Claims Act is reviewable.II.
 
 Facts and Procedural History
 
 3
 The eight plaintiffs whose complaints were consolidated into the Melo action allege that they were employed in various capacities through January 1989 in the Pennsylvania Auditor General's Office, during which time they had compiled satisfactory work records. The complaints allege that sometime after John Kerr, a former employee in the Auditor General's Office, admitted that he received payments to influence either hiring or promotion decisions for 21 employees in the Auditor General's Office, acting United States Attorney West provided a list of the 21 employees to Donald Bailey, the then-Auditor General, in a confidential letter dated on or about January 21, 1988. The letter stated that "[w]e can express no opinion on whether these listed individuals knew of the purchase of their job" and it contained the request "that you keep these names strictly confidential, not use them for any type of media disclosures other than necessary to appropriate administrative proceedings, and make them available only to your most trusted employees on a need-to-know basis." Melo App. at 11. Bailey subsequently conducted an investigation of the 21 employees through his Chief Counsel, James L. McAneny, and McAneny concluded that the Melo plaintiffs committed no wrongdoing nor were they aware of any wrongdoing committed on their behalf.
 
 
 4
 On or about April 30, 1988, Hafer was nominated as the Republican candidate for Auditor General and Bailey, the incumbent, was nominated as the Democratic candidate. The complaints allege that the Melo plaintiffs were registered Democrats and West was a registered Republican. They allege that during the election campaign between Hafer and Bailey, West provided Hafer with a copy of the letter he had sent to Bailey and advised Hafer that the 21 employees on the list "bought their jobs"; that West was "motivated by a desire to assist [Hafer] in the November, 1988 election and to create and/or foster a campaign issue that favored Ms. Hafer"; and that West provided the list with "a knowledge, understanding and expectation that ... Ms. Hafer, if elected, would fire all of the people on the list." Melo App. at 13. Hafer allegedly stated on numerous occasions during the campaign that she received the "jobs-bought" list from West and that, if elected, she would fire all employees on the list.
 
 
 5
 Hafer was elected as Auditor General in November 1988. According to the complaints, on February 1, 1989, Hafer, without conducting any additional investigation to determine the alleged involvement of the Melo plaintiffs in the job-buying scheme, fired 18 employees whose names appeared on the "jobs bought" list, including all eight Melo plaintiffs. In her letters terminating the Melo plaintiffs' employment, Hafer stated that the dismissal was "necessary based on information gathered by my office as well as through cooperation with other governmental agencies as a result of an investigation of your involvement in a job buying and/or a job promotion scheme in the Auditor General's Office." Melo App. at 14. The Melo plaintiffs allege that Hafer did not follow the provisions in the Auditor General's Policy and Procedure Manual, in effect since on or about January 1986, which includes procedural protections and a "just cause" requirement for dismissals.
 
 
 6
 The complaints also allege that an article in the February 2, 1989 edition of the Patriot-Capital News quoted both Hafer, as stating that she was firing 18 employees who had paid "up to $5,000 each for their jobs under a previous administration," and West, as stating that "he appreciated Ms. Hafer's definitive action in firing the eighteen employees."
 
 
 7
 The factual allegations and legal claims against Hafer alleged by the Gurley plaintiffs are similar to those made by the Melo plaintiffs. The Gurley plaintiffs allege that they had been continuously employed at the Auditor General's Office in various capacities until February 21, 1989 and had performed their work satisfactorily; that all but one of them were registered Democrats; that all had been supporters of Bailey in the November 1988 election for Auditor General; and that on February 21, 1989, Hafer discharged them without explanation. Unlike the Melo plaintiffs, they have not sued West and make no allegations as to him.
 
 
 8
 The claims made by the plaintiffs under 42 U.S.C. Sec. 1983 are that their firing by Hafer deprived them of their right to procedural and substantive due process and interfered with their First Amendment freedom of political association. The Melo plaintiffs also allege that Hafer and West engaged in a conspiracy to deprive them of due process and equal protection of the law, and they include the state law claims against West of defamation and interference with contractual relations. Each Melo plaintiff requests $2 million in compensatory damages, $1.5 million in punitive damages, and reasonable attorneys' fees stemming from the alleged violations of their civil rights. They do not request any form of injunctive relief. Each Gurley plaintiff requests $500,000 in compensatory damages and $500,000 in punitive damages. Six of the Gurley plaintiffs also request reinstatement without back pay.
 
 
 9
 The procedural sequence of events is relevant to an understanding of the nature of the district court's disposition. The complaints were filed in April and May of 1989. Hafer filed her answers on June 14, 1989.[1] On July 6, 1989, the district court ordered both the Melo and the Gurley plaintiffs to submit joint discovery schedules by July 12, 1989, not to extend beyond September 28, 1989. However, on July 14, 1989, the court deferred the filing of a joint discovery schedule and ordered Hafer to submit her motion for summary judgment by August 9, 1989. The court consolidated the actions on July 18. West moved to stay discovery in the Melo actions on July 20, but the district court never acted on this motion.
 
 
 10
 On July 28, 1989, West filed a motion in the Melo action to dismiss or, in the alternative, for summary judgment, contending, inter alia, that the Melo plaintiffs' section 1983 claim was barred because they had not alleged facts sufficient to establish a conspiracy between Hafer and West whereby he was acting under color of state law. Concurrently, the Director of the Torts Branch of the Department of Justice filed a certification pursuant to 28 U.S.C. Sec. 2679(d)(1), stating that "[o]n the basis of information presently available with respect to the occurrences referred to therein, defendant James J. West at all times relevant was acting within the scope of his employment as an employee of the United States." Melo App. at 195. The government also filed a motion to substitute itself for West on the Melo plaintiffs' state law claims of defamation and contractual interference, again pursuant to 28 U.S.C. Sec. 2679(d)(1), and thereafter to dismiss these claims on the ground that under 28 U.S.C. Sec. 2680(h) the government had not waived its sovereign immunity for claims for defamation and contractual interference.
 
 
 11
 On August 9, 1989, Hafer filed a consolidated motion for summary judgment against both the Melo and Gurley plaintiffs, contending, inter alia, that because she was sued only in her official capacity, the plaintiffs' claims were barred by the Eleventh Amendment, and further contending that the plaintiffs had not stated a claim for conspiracy. The Melo plaintiffs, in response to West's motion for summary judgment or dismissal, argued that the court should allow a continuance of discovery pursuant to Federal Rule of Civil Procedure 56(f), as they had no personal knowledge of what transpired between West and Hafer and would therefore not be able to submit affidavits based on the "personal knowledge" of the affiants in order to oppose the motion for summary judgment. Attached to the response was a declaration of James C. Melo to that effect. Again, in their joint response to Hafer's motion for summary judgment, the plaintiffs stated that they did not have adequate time to conduct discovery, although they did not attach the affidavit thereto.
 
 
 12
 In three separate orders issued on September 28, 1989, the district court granted Hafer's motion for summary judgment, granted the government's motion to substitute itself for West and to dismiss the Melo plaintiffs' state tort claims, and declared as moot West's motion for summary judgment. On the same day the court denied as moot the Melo plaintiffs' motion to remand the case that had been removed from state court. See note 1, supra.
 
 
 13
 In a subsequent opinion, the court explained its orders. It held that the plaintiffs' section 1983 claims were barred because they had sued Hafer in her official capacity and that she was not a "person" for purposes of section 1983. The court held that the Melo plaintiffs had not alleged facts showing that the alleged conspiracy between Hafer and West involved some racial or other class-based discriminatory animus, and that therefore their claim based on equal protection, if treated as filed under 42 U.S.C. Sec. 1985(3), failed. Finally, the court held that substitution of the government for West as a defendant to the Melo plaintiffs' state law claims was "necessitated" by the Federal Tort Claims Act in light of the government's certification that West was acting within the scope of his employment, and that those claims were then dismissed because claims against the United States for defamation and contractual interference are expressly excluded under 28 U.S.C. Sec. 2680(h) from the sovereign immunity waiver in the Federal Tort Claims Act.
 
 
 14
 Both the Melo and the Gurley plaintiffs filed timely notices of appeal, which we have consolidated for our review. We have jurisdiction over the district court's final orders pursuant to 28 U.S.C. Sec. 1291.[2]
 
 III.
 Discussion
 A.
 Standard of Review
 
 15
 At the outset, we must consider what material is appropriately before us. The district court dismissed the action against West but denominated the dispositive order as to Hafer as the grant of summary judgment for Hafer. We have previously held that the label used by a district court, albeit indicative, " 'is not binding on a Court of Appeals.' " Bogosian v. Gulf Oil Corp., 561 F.2d 434, 443 (3d Cir.1977) (quoting Tuley v. Heyd, 482 F.2d 590, 593 (5th Cir.1973)), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); see also Rose v. Bartle, 871 F.2d 331, 340 (3d Cir.1989). Rather, we must "look to the course of the proceedings and basis for decision in the district court" to determine our standard of review. Bogosian, 561 F.2d at 443. If the district court dismisses an action for failure to state a claim on the face of the pleadings on a motion for summary judgment, "a motion so decided is functionally equivalent to a motion to dismiss" and we must review it accordingly. Id. at 444; see also 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 56.02, at 56-33 to 56-34 (2d ed. 1988).
 
 
 16
 The plaintiffs contend that we should not consider any discovery materials extraneous to the complaint, as they did not have an opportunity to complete discovery and the district court in fact disposed of the actions based on the face of the complaint. Hafer and West, on the other hand, argue that the plaintiffs had an adequate time to conduct discovery and we should therefore determine whether they are entitled to summary judgment based on the factual record compiled during discovery.
 
 
 17
 Although the parties have engaged in some discovery and have submitted a variety of documents external to the complaints and their answers, we conclude that we must review the district court's action as one granting a motion to dismiss. The district court's memorandum opinion makes no reference to any of the materials submitted by the parties that were extraneous to the pleadings. It is clear that the court's action rested solely on the failure of the allegations on the face of the complaint to state claims against Hafer and West. See Bogosian, 561 F.2d at 444 (district court order should be treated as one dismissing complaint for failure to state a claim because it "excluded everything but the complaint in granting the motions").
 
 
 18
 Furthermore, the district court's July 14, 1989 order deferred the filing of a joint discovery schedule and ordered Hafer to submit her motion for summary judgment by August 9, 1989. Although this order did not technically prohibit the parties from engaging in further discovery, it could reasonably have deterred further discovery by plaintiffs. Certainly the order demonstrates that the court was willing to consider the defendants' dispositive motions without a complete factual record developed during a defined discovery period.
 
 
 19
 The plaintiffs' objections to proceeding with summary judgment were called to the district court's attention by the Melo plaintiffs in their response to West's motion. They sought to comply with Rule 56(f) through the declaration by Melo[3] in which he stated that "neither I nor the other plaintiffs would have personal knowledge of [West and Hafer's communications during the 1988 election]" and requested that the court grant a continuance of discovery until "counsel has had an opportunity to examine under oath the defendants, Mr. Bailey and all other persons who have knowledge of the matter." Melo App. at 111, 112. The district court's failure to rule on the Melo plaintiffs' request for a continuance of discovery, as well as its failure to rule on West's motion for a protective order, suggests that the court considered the discovery issue irrelevant for purposes of its decision.
 
 
 20
 Because we treat the district court's orders as granting a motion to dismiss, we must determine whether, in accepting as true the factual allegations in the Melo and Gurley plaintiffs' complaints and all reasonable inferences that can be drawn therefrom, no relief can be granted under any set of facts which could be proved. See Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988). For this purpose, we cannot take cognizance of the affidavits of Hafer and West denying many of the plaintiffs' factual allegations.
 
 B.
 Individual Capacity Claim Against Hafer
 
 21
 In Will v. Michigan Dept. of State Police, --- U.S. ----, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), the Supreme Court held that neither a state nor state officials sued in their official capacities for money damages are "persons" under section 1983,[4] and that therefore a suit brought in state court against the Michigan Director of State Police was barred. The district court, relying on Will, concluded that the plaintiffs have sued Hafer only in her official capacity and therefore dismissed their section 1983 claims. On appeal, the plaintiffs contend that the district court erred as a matter of law.
 
 
 22
 The lines marking the boundaries between official and personal capacity suits have been drawn primarily in the context of Eleventh Amendment cases. That amendment has been interpreted to bar suits for monetary damages by private parties in federal court against a state or against state agencies. See Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974).[5] It also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury. Graham, 473 U.S. at 165-66, 105 S.Ct. at 3104-05. In a suit against state officials in their "personal" capacity, however, where the plaintiff seeks recovery from the personal assets of the individual, the state is not the real party in interest; the suit is therefore not barred by the Eleventh Amendment. Id. at 165-68, 105 S.Ct. at 3104-07.
 
 
 23
 The Will Court's conclusion that section 1983 suits could not be brought against state officials in their official capacity followed from the Court's earlier Eleventh Amendment decisions. Although the Will Court did not have occasion to consider the status of personal capacity suits against state officials under section 1983, we conclude, borrowing the same Eleventh Amendment jurisprudence that the Will Court looked to, that because personal capacity suits against state officials are actions against the individual and not the state, state officials sued for damages in their personal capacities are "persons" under section 1983 and therefore subject to suit. See, e.g., Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 567 n. 10 (1st Cir.1989).
 
 
 24
 In determining whether plaintiffs sued Hafer in her personal capacity, official capacity, or both, we first look to the complaints and the "course of proceedings." Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (quoting Brandon v. Holt, 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878 (1985)); see Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir.1988). One of the Gurley complaints, which contains a request by six of the plaintiffs for both reinstatement and damages, explicitly specifies that plaintiffs' request for reinstatement "is asserted against the defendant in her official capacity," but that their monetary claims against Hafer "are asserted against the defendant in her personal capacity."
 
 
 25
 The Will opinion supports maintenance of a section 1983 claim against a state official for reinstatement. The Court, relying again on the Eleventh Amendment, stated that "a State official in his or her official capacity, when sued for injunctive relief, would be a person under Sec. 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " Will, 109 S.Ct. at 2311 n. 10 (quoting Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14). It follows that the district court erred insofar as it dismissed the Gurley plaintiffs' claim for reinstatement against Hafer.[6]
 
 
 26
 As we noted above, these Gurley plaintiffs were explicit that their monetary claims were asserted against Hafer in her individual capacity. The remaining Gurley plaintiffs and the Melo plaintiffs, although not as explicit, signified a similar intent because the captions in the complaints only list "Barbara Hafer," and not the Commonwealth of Pennsylvania, as a defendant, and only request damages from Hafer and not from the state. It appears that Hafer understood that plaintiffs sought to sue her in her personal capacity because she raised the defense of qualified immunity throughout the course of these proceedings, a defense available only for governmental officials when they are sued in their personal, and not in their official, capacity. See Graham, 473 U.S. at 166-67, 105 S.Ct. at 3105-06; Conner v. Reinhard, 847 F.2d 384, 394 n. 8 (7th Cir.), cert. denied, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); Melton v. City of Oklahoma City, 879 F.2d 706, 727 n. 32 (10th Cir.), reh'g granted in part on other grounds, 888 F.2d 724 (10th Cir.1989); Lundgren v. McDaniel, 814 F.2d 600, 604 (11th Cir.1987).[7] Moreover, once plaintiffs explained in the district court that they sued Hafer for damages in her individual capacity, they should have been given leave to amend to so assert with specificity, if there was any remaining ambiguity about that issue.
 
 
 27
 The district court held that the plaintiffs only sued Hafer in her official capacity, notwithstanding their protestations to the contrary, because Hafer would not have been empowered to effectuate the removal of plaintiffs from their positions had she been acting in her personal capacity rather than in her role as Auditor General. However, the fact that Hafer's position as Auditor General cloaked her with the authority to fire the plaintiffs merely supports the undisputed proposition that she acted under color of state law in firing the plaintiffs, a prerequisite to a successful section 1983 suit. See Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir.1984).[8] It does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official capacity. See Graham, 473 U.S. at 166, 105 S.Ct. at 3105 (to establish personal liability under section 1983 "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right") (emphasis added).
 
 
 28
 We reject Hafer's suggestion that a state official can be sued in her personal capacity only if the allegedly unconstitutional actions were not taken in her official capacity. The Supreme Court cases expressly recognize that individual capacity suits may be brought against government officials who acted under color of state law. See, e.g., Brandon v. Holt, 469 U.S. 464, 472-73, 105 S.Ct. 873, 878-79, 83 L.Ed.2d 878 (1985); Owen v. City of Independence, 445 U.S. 622, 637-38, 100 S.Ct. 1398, 1408-09, 63 L.Ed.2d 673 (1980). In fact, underlying each of the cases considering the availability of a qualified immunity defense to a claim for damages against the state official was an individual capacity claim. See, e.g., Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (suit by arrestee against state trooper); Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (suit by employee against official of state highway department); Tower v. Glover, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (suit by clients against public defenders who allegedly conspired with state officials); Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (suit by prisoner against state prison officials); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (suit by former prisoner against state prosecuting attorney).
 
 
 29
 Hafer argues that because she has final policymaking authority over hiring and firing in the Auditor General's Department, her actions leading to the firing of the plaintiffs, even if in violation of a "just cause" dismissal policy followed by previous Auditor Generals, constitutes a new state policy and therefore precludes suit against her in her personal capacity. The Second Circuit, in a persuasive opinion, has rejected a similar argument.
 
 
 30
 In Farid v. Smith, 850 F.2d 917 (2d Cir.1988), an inmate filed a civil rights action against the superintendent of the correctional facility for improperly depriving him of access to certain personal materials. The court held that although the Eleventh Amendment barred suit for damages against the superintendent in his official capacity, it did not bar the inmate from pursuing the action against the superintendent in his personal capacity, even if he was following state policy when committing such acts. Id. at 921. A fortiori, a state official who herself is responsible for an unconstitutional policy would be personally liable, unless of course she is ultimately successful in her qualified immunity claim. However, disposition on qualified immunity grounds is far different from a disposition on failure to state a claim, which is what the district court did here.
 
 
 31
 In short, we hold that a section 1983 claim for reinstatement may be maintained against Hafer in her official capacity, that a damage claim under section 1983 alleging civil rights violations may be maintained against Hafer in her individual capacity, that the allegations in the complaints adequately put her on notice of that claim, and that such a claim is not barred by the Eleventh Amendment. Just as the district court erred in dismissing the reinstatement claims because Hafer is a "person" for injunctive relief, so also the district court erred in dismissing the plaintiffs' section 1983 damage claims against Hafer individually because she is a "person" in that capacity[9].
 
 C.
 Sec. 1983 Conspiracy Claim Against West
 
 32
 The section 1983 claim against West asserted by the Melo plaintiffs stands on a different footing than the claim against Hafer. We must consider whether, under the allegations of the complaint, West, who was not a state official, can be viewed to have been acting under color of state law. Because the district court only considered the allegation that West and Hafer conspired to deprive the Melo plaintiffs of their constitutional rights as a claim under 42 U.S.C. Sec. 1985(3),[10] it did not reach this issue. A fair reading of the complaint shows that plaintiffs seek to assert a section 1983 claim, and West does not contend otherwise.
 
 
 33
 Maintenance of a section 1983 claim requires a showing that the defendant acted under color of state law, but the Supreme Court has held that private parties acting in a conspiracy with a state official to deprive others of constitutional rights are also acting "under color" of state law. See Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186-87, 66 L.Ed.2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966).[11] Consequently, such private parties can be subject to liability under section 1983. See Adickes, 398 U.S. at 152, 90 S.Ct. at 1605. It follows that federal employees who conspire with state officials to violate someone's constitutional rights are treated as acting under color of state law. See Hampton v. Hanrahan, 600 F.2d 600, 623 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).[12]
 
 
 34
 The Melo complaint alleges that West transmitted the "jobs bought" list to Hafer when she was a candidate "with a knowledge, understanding and expectation that he would be creating a campaign issue favorable to Ms. Hafer and that Ms. Hafer, if elected, would fire all the people on the list." Melo App. at 13. Assuming arguendo that the alleged working relationship between Hafer and West during the fall 1988 campaign constitutes "concerted" or "joint" action sufficient to transmute West, a private actor, into one acting under color of state law, see Robb v. City of Philadelphia, 733 F.2d 286, 291-92 (3d Cir.1984); Cruz v. Donnelly, 727 F.2d 79, 82 (3d Cir.1984), it is insufficient in this case because Hafer was not a state actor at the time of the alleged concerted and conspiratorial conduct.[13] We note that the complaint does not allege that Hafer and West conspired at any time after Hafer took office.
 
 
 35
 It is true that conspirators can be held liable for subsequent acts taken pursuant to a conspiracy, see Hampton, 600 F.2d at 621, and that the Melo plaintiffs have alleged that their firing after Hafer became a state official was "in the course of, in furtherance of and was the culmination of the aforesaid conspiracy." Melo App. at 18. However adequate these allegations might be, if proven, to impose liability under civil conspiracy law generally for acts subsequent to the formation of the conspiracy, they do not supply the missing link of action under color of state law.
 
 
 36
 When a private party has been held to be acting under color of state law, it has always been because of action in conjunction with an official who was then a state actor. See, e.g., Adickes, 398 U.S. at 149-52, 90 S.Ct. at 1603-06; Lugar v. Edmondson Oil Co., 457 U.S. 922, 941-42, 102 S.Ct. 2744, 2755-56, 73 L.Ed.2d 482 (1982); United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1546-47 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989); Robb, 733 F.2d at 291-92. It is the presence of that state actor that clothes the private party with the "under color of state law" vestment. See Adickes, 398 U.S. at 152, 90 S.Ct. at 1605 (" 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.' ") (quoting Price, 383 U.S. at 794, 86 S.Ct. at 1156 (1966)) (emphasis added); Lugar, 457 U.S. at 941, 102 S.Ct. at 2756 ("private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment") (emphasis added). When neither of the parties who allegedly conspired is a state official, there is no state actor to supply even a colorable basis for investing the private actor with a state mantle, even if one of the parties later becomes a state official. Plaintiffs have cited no case for such a proposition, and we see no reason to stretch the law so far. It follows that the Melo complaint failed to state a section 1983 claim against West, and the court did not err in dismissing that claim.
 
 D.
 State Law Claims
 
 37
 We turn finally to the dismissal of the state law claims. While the Melo action against West containing both federal and state law claims was pending in the district court, the government filed a scope of employment certification and motion to substitute itself for West. In doing so, the government followed the procedure established by the Federal Employees Liability Reform and Tort Compensation Act of 1988 (FELRTCA), which amended the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346(b), 2671-2680 (1988).
 
 
 38
 FELRTCA was passed in response to Westfall v. Erwin, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which held that a federal employee is immune only if s/he was acting within his/her scope of employment and was exercising governmental discretion. The primary purpose of FELRTCA was "to return Federal employees to the status they held prior to the Westfall decision," that is, a status of absolute immunity for activities within their scope of employment. See H.R.Rep. No. 100-700, 100th Cong., 2d sess., reprinted in 1988 U.S.Code Cong. & Admin.News 5945, 5947 [hereinafter H.R.Rep. No. 100-700]. To accomplish that mission, FELRTCA established an exclusive remedy against the United States for suits based on certain negligent or wrongful acts of federal employees acting within the scope of their employment, 28 U.S.C. Sec. 2679(b)(1) (1988), and also added a statutory procedure for certification by the Attorney General to effect a substitution of the United States for its employees in cases pending in federal courts.
 
 The relevant provision states that:
 
 39
 [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
 
 
 40
 28 U.S.C. Sec. 2679(d)(1) (1988).
 
 
 41
 The district court granted the United States' motion for substitution, explaining that because the government certified that West had acted within the scope of his employment,[14] the substitution of the government for West was "necessitated." The court then granted the United States' motion to dismiss the state law claims of defamation and contractual interference because the FTCA's waiver of tort immunity for damages "caused by the negligent or wrongful act or omission of any employee" of the federal government "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. Sec. 1346(b) (1988), does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. Sec. 2680(h) (1988).
 
 
 42
 Although the district court stated that plaintiffs do not contest that West was acting within the scope of his employment when he allegedly performed the acts complained of, plaintiffs do in fact contest the accuracy of the scope of employment certification. We must thus consider whether the government's certification under 28 U.S.C. Sec. 2679(d)(1)[15] is binding for purposes of substitution of the government, as the government argued in the district court and the district court held, or whether such a certification is subject to judicial review. The courts have divided on this issue. Compare Nasuti v. Scannell, 906 F.2d 802, 813 (1st Cir.1990) (judicial review of scope certification permitted); Arbour v. Jenkins, 903 F.2d 416, 421 (6th Cir.1990) (same); Gogek v. Brown University, 729 F.Supp. 926, 933 (D.R.I.1990) (same); Baggio v. Lombardi, 726 F.Supp. 922, 925 (E.D.N.Y.1989); Martin v. Merriday, 706 F.Supp. 42, 44-45 (N.D.Ga.1989) (same); with S.J. and W. Ranch, Inc. v. Lehtinen, 717 F.Supp. 824, 826-27 (S.D.Fla.1989) (no judicial review of scope certification); Mitchell v. United States, 709 F.Supp. 767, 768 & n. 4 (W.D.Tex.1989) (same), rev'd on other ground, 896 F.2d 128 (5th Cir.1990);[16] see also Mitchell v. Carlson, 896 F.2d 128, 134, 136 (5th Cir.1990) (suggesting no judicial review of scope certification); Aviles v. Lutz, 887 F.2d 1046, 1049 (10th Cir.1989) (same).
 
 
 43
 While this case was on appeal, the United States changed its position on this issue. The government now states that although the government's determination is entitled to deference, "the district court may review the Attorney General's certification that the challenged acts occurred within the scope of employment of a federal official."[17] In light of the division among the courts on this issue, we will analyze the issue de novo before establishing this court's position.
 
 
 44
 We must first look to the language of the statute, see United States v. James, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986), and in particular to the distinction in the language between sections 2679(d)(1), governing certifications in cases filed initially in federal court, and section 2679(d)(2), authorizing the Attorney General to provide certifications for the purpose of removing actions filed in state court to federal court.[18] The last sentence of section 2679(d)(2) specifically provides that "[t]his certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. Sec. 2679(d)(2) (emphasis added). There is no similar language of conclusiveness in section 2679(d)(1). Also, the explicit statement that the binding character of certification applies only "for purposes of removal" suggests that Congress recognized a distinction between use of the certification for removal and its use for purposes of substitution of the government as the defendant in actions filed in federal court. See Nasuti, 906 F.2d at 812-813.
 
 
 45
 There are significant policy reasons why Congress would choose to give the government an unchallengeable right to have a federal forum for tort suits brought against its employees. Historically, the government has generally preferred to have litigation which it or its employees are defending in the neutral confines of federal courts. For example, a similarly "absolute" right of removal is provided by 28 U.S.C. Sec. 1442(a)(1) whenever a suit against a United States officer is filed in a state court for any act "under color of [federal] office" because, as the Supreme Court has explained, "Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969).
 
 
 46
 There is no suggestion in FELRTCA that once the federal forum has been secured, Congress was inclined to make the Attorney General's right to substitute the government for the employee unreviewable. In fact, Congress acknowledged the propriety of having a federal court review the scope of employment issue when the positions of the federal employee and the government conflict. Under 28 U.S.C. Sec. 2679(d)(3) (1988), "[i]n the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment." The same provision insures a federal forum for such a judicial determination.[19] There is no reason why Congress would have provided employees with judicial review of the scope of employment certification decisions while denying a similar review of certification decisions to dissatisfied plaintiffs.
 
 
 47
 The legislative history of the Act also supports our reading of FELRTCA. In discussing the exclusivity issue, the House Report noted that the Federal Drivers Act, 28 U.S.C. Sec. 2679(b)-(e) (1982) (subsequently amended in 1988), one of the components of the FTCA, provided an exclusive federal remedy when the injuries resulted from the operation of a motor vehicle by a federal employee acting within the scope of his employment. See H.R. 100-700, 1988 U.S.Code Cong. & Admin.News at 5948. The Drivers Act contained a provision for a scope of employment certification by the Attorney General for purposes of removal to federal court. Although it did not set forth any scope of employment certification procedures for actions filed in federal court, federal courts routinely made a determination as to whether the employee was acting within his or her scope of employment before ruling whether the action could be maintained against the government exclusively. See, e.g., Cronin v. Hertz Corp., 818 F.2d 1064 (2d Cir.1987); Borrego v. United States, 790 F.2d 5 (1st Cir.1986); Levin v. Taylor, 464 F.2d 770 (D.C.Cir.1972).
 
 
 48
 The extensive discussion in the House Report on the factors relevant to whether an act was within the employee's scope of employment, see H.R.Rep. No. 100-700, 1988 U.S.Code Cong. & Admin.News at 5949-50, suggests that Congress intended that the practice of court determination of the issue should be continued. Representative Frank, the sponsor of the Act, confirmed that FELRTCA was meant to ensure continuity, rather than a break, with past practice when he stated at a legislative hearing that "the plaintiff would still have the right to contest the certification if they [sic] thought the Attorney General were certifying without justification." Legislation to Amend the Federal Tort Claims Act: Hearing Before the Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary, 100th Cong., 2d Sess. 60, 128 (April 14, 1988) (statement of Representative Frank).
 
 
 49
 Based on the language, structure, and legislative history of FELRTCA, we thus independently conclude that the district court may review the government's certification that the actions which the Melo plaintiffs allege that West took were within the scope of his employment.
 
 
 50
 It is therefore evident that we must vacate the district court's dismissal of the state law claims. The dismissals were predicated on the government's status as a defendant, which in turn is dependent on whether West was acting in the scope of employment. On remand, the parties will have an opportunity to address that issue. See 28 U.S.C. Sec. 1346(b) (scope of employment determination under the FTCA to be made "in accordance with the law of the place where the act or omission occurred"); see also Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). The district court will also have to decide which factors are relevant to that determination. The briefs of the parties have not discussed that issue.[20]IV.
 
 Conclusion
 
 51
 For the foregoing reasons, we will vacate the orders of the district court dismissing the civil rights claims as to Hafer and dismissing the Melo plaintiffs' state law claims as to West, and remand for further proceedings consistent with this opinion. We will affirm the order dismissing the Melo plaintiffs' section 1983 claim against West.
 
 
 52
 Costs to be awarded to appellants in the Gurley action. In the Melo action, appellants to bear one-third of the costs, Hafer one-third, and West one-third.
 
 
 
 [1]
 On June 27, 1989, the Melo plaintiffs filed a protective action in state court against both Hafer and West incorporating by reference both the federal and state claims in their federal complaint. This action was removed by West to the Eastern District of Pennsylvania under 28 U.S.C. Secs. 1441(a) and 1442(a)(1) on July 19, 1989 and consolidated with the Melo action. The Melo plaintiffs filed a motion to remand
 
 
 [2]
 Hafer had counterclaimed against the Melo plaintiffs for fraud and conspiracy to commit fraud. Thereafter, the district court adopted the parties' stipulation that Hafer's counterclaims were dismissed without prejudice, with the right to reinstate them at a later date should we reverse the district court's grant of summary judgment. In response to this court's inquiry into the effect on our jurisdiction of the dismissal of the counterclaim without prejudice, Hafer notified this court by letter memorandum that she is abandoning the counterclaim and will not reassert it in the district court in the event that we remand this action for further consideration. Therefore, there is no impediment to the exercise of our appellate jurisdiction at this time
 
 
 [3]
 Rule 56(f) provides in pertinent part that
 [s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
 Fed.R.Civ.P. 56(f). We express no opinion as to whether the Melo declaration satisfies the Rule 56(f) requirements previously enunciated by this court. See Lunderstadt v. Colafella, 885 F.2d 66, 71-72 (3d Cir.1989) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir.1988)) ("[A] Rule 56(f) motion must identify with specificity 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.' "). Nor do we express an opinion as to the effect of the failure to attach the Melo declaration to the plaintiffs' response to Hafer's motion for summary judgment.
 
 
 [4]
 42 U.S.C. Sec. 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .
 
 
 [5]
 In suits for injunctive or declaratory relief, however, the Eleventh Amendment does not bar an action in which a state official is the named party. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)
 
 
 [6]
 There have been some references to arbitration proceedings initiated by plaintiffs which culminated in orders directing their reinstatement. Such awards are not relevant to the issues on appeal
 
 
 [7]
 A defendant being sued in his or her personal capacity should be given adequate notice that his or her personal assets are at stake. Two courts of appeals apparently require the complaint to specifically identify the capacity in which a defendant is being sued. See Wells v. Brown, 891 F.2d 591, 593 (6th Cir.1989); Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989). Our court has taken a more flexible approach, see Gregory v. Chehi, 843 F.2d at 119-20 (court "must interpret the pleading"); see also Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14. It is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity
 
 
 [8]
 The "under color of state law" requirement, which is identical to the "state action" requirement of the Fourteenth Amendment, requires a determination of "whether there is a sufficiently close nexus between the State and the challenged action." Johnson v. Orr, 780 F.2d 386, 390 (3d Cir.) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)), cert. denied, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). There is no question that Hafer, the head of the Department of Auditor General, see, 71 Pa.Stat. Sec. 66 (Supp.1990), is vested under state law with the authority to hire and fire employees in the Department, thereby satisfying the "under color of state law requirement." See, e.g., 71 Pa.Stat. Sec. 66 (Supp.1990) (Department heads shall "exercise and perform the duties by law vested in and imposed upon the department"). The plaintiffs' allegation that Hafer misused her power in firing them does not deprive her actions of the imprimatur of state authority. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)) ("[M]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.' ")
 
 
 [9]
 Hafer contends on appeal that even if we were to hold that she is being sued in her personal capacity, we should nevertheless affirm the district court's dismissal of the action, as the plaintiffs' complaints fail to state claims under either the due process clause or the First Amendment. In light of the fact that the district court did not consider these issues in the first instance, we decline to reach them on appeal
 
 
 [10]
 The court dismissed the claim under 42 U.S.C. Sec. 1985(3) on the ground that plaintiffs failed to allege any racial or class-based animus, as required for such a claim. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The Melo plaintiffs do not challenge this ruling on appeal
 
 
 [11]
 For this purpose we assume, without deciding, that the complaint alleges the prerequisites of a civil conspiracy. See Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)
 
 
 [12]
 We therefore reject West's argument that private parties can be viewed as acting under color of state law only when state or municipal officials substituted the judgment of private parties for their own judgment. Although such a showing may be a basis for finding non-state officials to have been acting under color of state law, see Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir.1984), it is not the only one. See note 13 infra
 
 
 [13]
 We focus on the alleged conspiracy because the Melo complaint provides no allegations which could satisfy the other bases for holding a private actor to possible liability under section 1983 discussed in National Collegiate Athletic Assoc. v. Tarkanian, 488 U.S. 179, 109 S.Ct. 454, 462, 102 L.Ed.2d 469 (1988) (state creation of legal framework governing defendant's conduct, delegation of authority to defendant, and knowing acceptance of benefits derived from the defendant's conduct)
 
 
 [14]
 The United States Attorney General has delegated this certification authority to United States Attorneys in consultation with the Department of Justice. See 28 U.S.C. Sec. 510 (1988); 28 C.F.R. Sec. 15.3(a) (1989)
 
 
 [15]
 The plaintiffs do not suggest that this section does not apply to a state law claim pendent to a federal claim filed initially in federal court. The plain statutory language covers this situation. We note that the government's certification of scope of employment was filed pursuant to 28 U.S.C. Sec. 2679(d)(1), for purposes of substituting the United States for West in the federal action, and not pursuant to 28 U.S.C. Sec. 2679(d)(2), to remove the state court action. West, however, had removed the action pursuant to other provisions of the United States Code
 
 
 [16]
 Two other courts of appeals, although not directly addressing this issue, have suggested that plaintiffs may seek judicial review of certification. See Sowell v. American Cyanamid Co., 888 F.2d 802, 805 (11th Cir.1989) ("[T]he Department of Justice has determined that [defendant] was acting within the scope of his employment, a determination which is obviously correct in light of the testimony at trial."); Lunsford v. Price, 885 F.2d 236, 238 n. 7 (5th Cir.1989) (noting that plaintiffs did not contest certification that employees' acts were within scope of employment)
 
 
 [17]
 The relevant portion of the government's letter states:
 At oral argument, the Court ... asked the undersigned counsel whether Mr. West contended that a determination by a government agency that an employee committed an alleged tort while acting within the scope of his employment was binding and conclusive on that issue and required that the Government be substituted as defendant. Although the Government initially advanced this interpretation of the statute following enactment, upon further inquiry counsel for Mr. West has learned that the Government's current position based on the legislative history of this statute is that the Attorney General's scope of employment determination is binding only for the purpose of the removal of a suit against a federal employee to federal court under 28 U.S.C. Sec. 2679(d)(2). With respect to whether the United States must be substituted as defendant as to tort claims raised against a federal employee, the Government's position is that, although the government's determination is entitled to deference, the district court may review the Attorney General's certification that the challenged acts occurred within the scope of employment of a federal official.
 Letter from Barbara L. Herwig and Peter R. Maier, Attorneys, Appellate Staff, Civil Division (March 20, 1990).
 
 
 [18]
 Section 2679(d)(2) provides in full that:
 [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.
 
 
 [19]
 If the employee petition is filed in an action pending in state court, the action may be removed without bond by the Attorney General to the federal court for such a determination, to be remanded if the court determines that the employee was not acting within the scope of employment. 28 U.S.C. Sec. 2679(d)(3)
 
 
 [20]
 In light of our holding, we need not reach the question of whether the government, if properly substituted for West, would be able to dismiss the action because of the exception to its waiver of sovereign immunity for claims of defamation and interference with contractual relations under 28 U.S.C. Sec. 2680(h). Compare Mitchell, 896 F.2d at 134-36 (plaintiff without remedies if government, as substituted party, is immune); Aviles, 887 F.2d at 1049-50 (same); Sowell, 888 F.2d at 805-06 (same); Moreno v. Small Business Admin., 877 F.2d 715 (8th Cir.1989) (same) with Smith v. Marshall, 885 F.2d 650, 654-56 (9th Cir.1989) (plaintiff may proceed against individual employee if substitution of government would lead to dismissal because of government immunity under 28 U.S.C. Sec. 2680(k)), cert. granted sub nom. United States v. Smith, --- U.S. ----, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990); Newman v. Soballe, 871 F.2d 969, 971-73 (11th Cir.1989) (same)
 It is unclear whether a federal employee who was not acting within the scope of his employment may yet have acted under color of his office insofar as that determination will control whether he is entitled to a federal forum, see 28 U.S.C. Sec. 1442(a)(1), and we will not attempt to answer that entirely hypothetical question (in advance of the district court's ruling on the government's scope of employment certification), the parties not having even briefed this issue. The point is relevant to the motion for remand, on which the district court must rule if it determines that West was not acting within the scope of his employment. Moreover, in view of the many uncertainties and imponderables about the status of the case on remand, we leave to the district court in the first instance the question whether, if the district court determines that West was not acting in the scope of his employment, the state law claims included in the federal action should be dismissed, see Tully v. Mott Supermarkets, Inc., 540 F.2d 187 (3d Cir.1976), because they were pendent to a federal claim against him which has been dismissed.