**Michael BOODY, Plaintiff,**

v.

**TOWNSHIP OF CHERRY HILL, Camden County Board of Chosen Freeholders, Cherry Hill Township Police Department, William Moffett, George Stein, Lt., Edward Borden, Josh Ottenberg, Office of the Camden County Prosecutor, John Does 1–15 (names being fictitious and unknown), jointly, severally, and individually, Defendants.**

No. CIV. A. 96–5145 (JBS).

United States District Court,
D. New Jersey.

Dec. 18, 1997.

Robert Freidel, David D. Blake, University Executive Campus, Turnersville, NJ, for plaintiff Michael Boody.

Burchard V. Martin, William J. Martin, Martin, Gunn & Martin, P.A., Westmont, NJ, for defendants Township of Cherry Hill, Cherry Hill Police Dept., William Moffett, and George Stein, Lt.

Robert G. Millenky, County Counsel by M. Lou Garty, Asst. County Counsel, Camden, NJ, for defendants Camden County Board of Chosen Freeholders, Edward Borden, Josh Ottenberg, and Office of the Camden County Prosecutor.

## OPINION

SIMANDLE, District Judge.

Currently before the court are a series of motions filed by all parties in this case and arising out of a Complaint filed by plaintiff Michael Boody against defendants Township of Cherry Hill ("Township"), Cherry Hill Police Department ("Police Department"), William Moffett ("Moffett"), the Cherry Hill Chief of Police, and Lt. George Stein ("Stein"), the Cherry Hill Director of Internal Affairs, (collectively, "Cherry Hill Defendants"); Camden County Board of Chosen Freeholders ("County"), Office of the Camden County Prosecutor ("Prosecutor's Office"), Edward Borden ("Borden"), the Camden County Prosecutor, and Josh Ottenberg ("Ottenberg"), an Assistant Camden County Prosecutor, (collectively, "Camden Defendants"); and John Does 1–15 (collectively, "Defendants").[1] All counts of the Complaint but one allege claims under state statutory and common law, including the Conscientious Employee Protection Act (CEPA), the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), intentional inflic-

---

1. The individual defendants held their respective positions at all times relevant to these motions.

(Compl. at ¶¶ 2,3,5,6.)

tion of emotional distress, negligent infliction of emotional distress, constructive discharge, conspiracy, harassment, and interference with contract of employment. The sole federal claim, asserted in Count Three of the Complaint solely against the Cherry Hill Defendants, arises under 42 U.S.C. § 1983 and provides this court with jurisdiction. *See* 28 U.S.C. §§ 1331 and 1367(a). Before the court are various motions and cross motions to dismiss and for summary judgment filed by all defendants and ultimately touching on each of plaintiff's claims. In response to defendants' motions, plaintiff filed two motions to amend the original Complaint. Finally, plaintiff has appealed a discovery Order of Magistrate Judge Robert B. Kugler. The court will consolidate these motions and treat them together in this Opinion.[2]

## I. *Background*

Plaintiff was a member of the Cherry Hill Police Department between August 1985 and May 18, 1995, when he tendered his resignation. (Pl. Cross–Motion for Summ. J. Reply Mem., Ex. I.) During the course of his employment with the Police Department, plaintiff received numerous commendations for his work. (Pl. Mem. in Opp'n to Camden Defs. 1st Motion for Summ. J., Ex. A.) Plaintiff alleges that while employed at the Police Department, he obtained a bachelor's degree from Rutgers University with a major in computer science. (Compl. at ¶ 14.) He allegedly used his newly acquired knowledge to develop a computer system for the Police Department at the behest of the Department's Chief of Police, defendant William Moffett. (Compl. at ¶ 22.) When plaintiff refused to turn over the "source code" of the system, defendant Moffett allegedly began a campaign to remove plaintiff from the Police Department. (Compl. at ¶ 33.)

Plaintiff further alleges that Moffett instituted a fraudulent "ticket reward system" in the Police Department, whereby police officers would receive undocumented leave as a reward for issuing a certain number of motor vehicle summonses. (Compl. at ¶ 51.) When plaintiff criticized this scheme, defendant Moffett allegedly responded with additional retaliatory actions against plaintiff. (Compl. at ¶ 71.)

Moffett's retaliation allegedly intensified after an event involving plaintiff that occurred on January 25, 1995, while plaintiff was off-duty. On that date, plaintiff and an acquaintance, William Mitchell, lured Charles Zanetich to Mitchell's home. (Pl. Mem. in Opp'n to Cherry Hill Defs.3d Motion for Summ. J., Ex. F, Boody Dep. at 121.) Plaintiff wanted to investigate threats he believed Zanetich had made against his life. (*Id.* at 121.) When Zanetich arrived, plaintiff and Mitchell frisked him, handcuffed him, placed him on the floor, and bound his ankles with tape. (*Id.* at 126–33.) Plaintiff never reported his actions to either the Cherry Hill or Gloucester County Police Departments. (*Id.* at 133–34.) The following day the incident was reported to the Cherry Hill Police Department. (Camden Defs. 1st Motion for Summ. J., Rule 12G Statement at ¶ 3.)[3]

The Police Department and the Prosecutor's Office subsequently commenced investigations of the incident. (Compl. at ¶¶ 88–92.) Plaintiff was represented by an attorney during these investigations. (Pl. Mem. in Opp'n to Cherry Hill Defs.2d Motion for Summ. J., Ex. A, Boody Cert. at ¶ 2.) On the advice of his attorney, plaintiff resigned from his position at the Police Department on May 11, 1995. (Boody Dep. at 177–78.) The resignation agreement provided that in exchange for

**2.** The court will refer to the motions and accompanying briefs by the order in which they were filed and by the parties who submitted them. The Camden Defendants have filed two motions for summary judgment. The first, on behalf of the County, the Prosecutor's Office, and Ottenberg was filed with the court on March 6, 1997. (Docket Item ("D.I.") 13–1.) Another was filed on behalf of Borden on December 15, 1997. (D.I.46–1.) Three motions of the Cherry Hill Defendants will be disposed of in this Opinion. The first was filed on April 4, 1997, (D.I.20–1); the second on June 27, 1997, (D.I.30–1); and the

third on October 27, 1997, (D.I.44–1.) In addition, plaintiff filed two motions to amend the original Complaint on March 11, 1997, (D.I.16–1), and August 1, 1997, (D.I.33–1), respectively. Finally, plaintiff appealed Magistrate Judge Kugler's discovery Order dated September 12, 1997. (D.I.40–1.)

**3.** To the extent that the court cites to defendants' statement of the facts, these matters are uncontested by plaintiff.

resigning and agreeing to testify truthfully before the grand jury investigating the Zanetich incident, plaintiff would not be subject to criminal prosecution for his involvement. (Pl. Mem. in Opp'n to Cherry Hill Defs.3d Motion for Summ. J., Ex. M.) Plaintiff subsequently testified before a grand jury regarding Mitchell's involvement in the incident. (Camden Defs. 1st Motion for Summ. J., Rule 12G Statement at ¶ 10.) Plaintiff was never indicted by the grand jury for his own involvement. (*Id.* at ¶ 12.) Plaintiff alleges that both the Cherry Hill and Camden Defendants investigated his involvement in the incident solely to retaliate against him and to force his resignation. (Compl. at ¶¶ 90, 107, 111.)

Plaintiff filed this Complaint on October 30, 1996. Each of the claims asserted by plaintiff is based on the alleged retaliatory conduct of the defendants. Counts One through Four assert claims against Moffett, Police Department, and Township under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19–1 *et seq.* (West 1988 & Supp.1997), N.J.S.A. 40A:14–147 (West 1993 & Supp.1997),[4] 42 U.S.C. § 1983, and the New Jersey Racketeer Influenced and Corrupt Organizations Act (New Jersey RICO), N.J.S.A. 2C:41–2 (West 1995)[5], respectively. Additionally, plaintiff asserts the following common law claims: intentional infliction of emotional distress against Moffett, Borden, and Ottenberg (Count Five); negligent infliction of emotional distress against Moffett, Borden, Ottenberg, Prosecutor's Office, and County (Count Six); constructive discharge against Moffett (Count Seven); conspiracy against Moffett, Borden, Police Department, and Does 1–15 (Count Eight); harassment against Moffett and Does 1–15 (Count Nine); and interference with contract of employment against the Camden Defen-

dants (Count Ten). In Count Eleven, plaintiff alleges that the actions of the individual defendants were all done within the scope of their employment and that their employers, Police Department, Township, Prosecutor's Office, and County, are strictly liable for their conduct.

The Camden Defendants have submitted two motions for summary judgment, the Cherry Hill Defendants three. In response, plaintiff has filed two motions to amend the Complaint and has also appealed the discovery Order of Magistrate Judge Robert B. Kugler dated September 12, 1997. The court will decide each of these motions and plaintiff's appeal together in this Opinion.

## II. *Discussion*

### A. *Summary Judgment Standard*

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture*

---

4. The Complaint refers to this statute as the "Civil Service Act," (Compl. at ¶ 75), and states that the statute "makes it unlawful for an employment authority to take or threaten to take any action against an employee for an employee's lawful disclosure in violation of any law or rule, government mismanagement or abuse of authority," (*id.*). The cited statute is neither entitled the "Civil Service Act" nor includes the quoted language. *See* N.J.S.A. 40A:14–147. Neither of plaintiff's proposed amended complaints corrects this error, and the court will not

delve further into this confusion. For purposes of this Opinion, the only relevance of this Count of the Complaint is that it intended to hold the Cherry Hill Defendants liable for the same retaliatory conduct that forms the basis of the CEPA claims.

5. Count Four of the Complaint mistakenly asserts a New Jersey RICO claim under N.J.S.A. 2C:41–2, which does not exist.

*Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir. 1996); *Kowalski v. L & F Products,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby,* 477 U.S. at 250; *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Anderson,* 477 U.S. at 248) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.").

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex,* 477 U.S. at 322–323. In such situations, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *Brewer,* 72 F.3d at 329–330 (citing *Celotex,* 477 U.S. at 322–23) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving

party's evidence is insufficient to carry its burden of persuasion at trial.").

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed.R.Civ.P. 56(e). They must do more than rely only "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (citation omitted); *see Liberty Lobby,* 477 U.S. at 249–50; *Celotex,* 477 U.S. at 324–25. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50.

### B. *The Cherry Hill Defendants*

#### 1. *The CEPA Claim*

■ In Count One of the Complaint, plaintiff asserts a claim under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19–1, *et seq.* (Compl. at ¶ 72.) Specifically, plaintiff alleges that Moffett, Police Department, and Township retaliated against him for being an outspoken critic of the allegedly fraudulent "ticket reward system." (*Id.*) The Cherry Hill Defendants have moved for summary judgment on plaintiff's CEPA claim on the ground that it was filed beyond the one year statute of limitations that applies to CEPA claims. N.J.S.A. 34:19–5 (West 1988 & Supp.1997); *Young v. Schering Corp.,* 275 N.J.Super. 221, 229, 645 A.2d 1238 (App.Div.1994), *aff'd on other grounds,* 141 N.J. 16, 660 A.2d 1153 (1995); *Lynch v. New Deal Delivery Service Inc.,* 974 F.Supp. 441, 455 (D.N.J.1997). The Cherry Hill Defendants argue that plaintiff's CEPA claim could have accrued no later than May 11, 1995, when he tendered his resignation, and that plaintiff did not file the Complaint until October 30, 1996, more than one year later.

Plaintiff makes three arguments as to why his claim is not time-barred, none of which, has merit. First, plaintiff argues that the doctrine of equitable estoppel prevents the Cherry Hill Defendants from raising the statute of limitations defense. (Pl. Mem. in Opp'n to Cherry Hill Defs.2d Motion for Summ. J. at 4.) Plaintiff contends that the doctrine applies here because the Cherry Hill Defendants misled him concerning the cause of action. Plaintiff offers no support for this argument except to state that his lawyer at the time of his resignation misled him as to the impact that his resignation would have on his ability to secure other employment. (*Id.*) Plaintiff's relationship with his attorney has no relevance to his argument that the Cherry Hill Defendants misled him, and plaintiff has therefore failed to establish the applicability of the doctrine of equitable estoppel.[6]

Second, plaintiff asserts that representations made by the Cherry Hill Defendants to plaintiff's prospective employers after he resigned from the Police Department constitute continuing violations of CEPA and toll the statute of limitations. (*Id.* at 6.) Plaintiff did not allege such a continuing violation in the Complaint and has himself stated, "Every claim for relief asserted in the Complaint is based upon the same transaction, i.e., the events leading up to the termination of Officer Boody's employment." (1st Motion to Amend the Compl. at 2.) In any event, the court need not address this argument, for the New Jersey Supreme Court has made clear that representations to prospective employers cannot constitute a CEPA violation. *Young v. Schering Corp.*, 141 N.J. 16, 32, 660 A.2d 1153 (1995).

Plaintiff finally argues that the Cherry Hill Defendants waived the statute of limitations defense by not pleading it in their answer. (Pl. Mem. in Opp'n at 10.) Plaintiff has apparently not read the Cherry Hill Defendants' Answer, attached to his own opposition memorandum, which clearly indicates that the CEPA statute of limitations was raised as a separate defense. (*Id.*, Ex. E at

11.) Plaintiff's CEPA claim is therefore time-barred, and the Cherry Hill Defendants are entitled to judgment as a matter of law on Count One of the Complaint.

### 2. *Remaining State Law Claims*

The Cherry Hill Defendants have also moved to dismiss plaintiff's remaining state law claims on the ground that these claims are barred by the CEPA waiver provision, which provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any collective bargaining agreement or employment contract; except that *the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State Law, rule or regulation or under the common law.*

N.J.S.A. 34:19–8 (West 1988) (emphasis added). The Cherry Hill Defendants argue that by instituting an action under CEPA, plaintiff has waived his other state law claims, which are all based on the same alleged retaliatory conduct. *See Young*, 141 N.J. at 29, 660 A.2d 1153; *Young v. Schering Corp.*, 275 N.J.Super. 221, 238, 645 A.2d 1238 (App. Div.1994) (dismissing plaintiff's common law claims of wrongful discharge, malicious interference with advantageous business relationships, harassment, and intentional infliction of emotional distress, where they were directly related to plaintiff's retaliatory discharge claim under CEPA); *Lynch v. New Deal Delivery Service Inc.*, 974 F.Supp. 441, 455 (D.N.J.1997) (granting defendant's motion for summary judgment on plaintiff's CEPA claim as time-barred and dismissing claim of intentional infliction of emotional distress, where it was related to CEPA retaliatory discharge claim); *Casper v. Paine Webber Group, Inc.*, 787 F.Supp. 1480, 1509 (D.N.J.1992) (dismissing claim under New Jersey RICO, where the only injury alleged under RICO was retaliatory discharge for

---

**6.** Plaintiff makes an additional argument that the Cherry Hill Defendants prevented him from timely filing this cause of action by holding the threat of prosecution over his wife. (Pl. Mem. in Opp'n at 4.) Plaintiff only offers as support documents dated prior to his resignation that have no relevance to this argument. (*Id.*, Ex. C .)

not participating in defendants' allegedly fraudulent scheme).

▮ Plaintiff does not dispute what the Complaint makes clear: his other state law claims are based on the same retaliatory conduct that forms the basis of his CEPA claim and would be deemed waived had this case been brought in New Jersey State Court. (*See* Pl. Mem. in Opp'n at 11.) Plaintiff argues that Fed.R.Civ.P. 8(e)(2), which permits alternative pleading, preempts the CEPA waiver provision. (*Id.* at 11.) This court, however, in exercising its supplemental jurisdiction over plaintiff's state law claims is bound to apply state substantive law. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Thus, the court must apply CEPA's waiver provision to plaintiff's state law claims. *See Lynch v. New Deal Delivery Service Inc.,* 974 F.Supp. 441, 455–56 (D.N.J.1997) (applying CEPA waiver provision to plaintiff's state law causes of action); *Casper v. Paine Webber Group, Inc.,* 787 F.Supp. 1480, 1508–09 (D.N.J.1992) (same). The court holds that plaintiff's state law claims are barred by the CEPA waiver provision. Plaintiff's remaining state law claims in Counts Two and Four through Ten are therefore dismissed as to the Cherry Hill Defendants. Count Eleven is also dismissed as to defendants Township and Police Department, to the extent that it seeks to hold them liable for the state law violations of their employees, Moffett and Stein, under the doctrine of *respondeat superior.*

### 3. *Section 1983 Claims*

▮ Plaintiff's remaining claim against the Cherry Hill Defendants is under 42 U.S.C. § 1983. (Compl., Count Three.) The Cherry Hill Defendants have moved for summary judgment on this claim on the ground that plaintiff's Complaint fails to allege a violation of federal constitutional or statutory rights as required by § 1983. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir.1994). Because this motion attacks the sufficiency of the Complaint, it is functionally equivalent to a motion to dismiss for failure to state a claim and will be treated as such. *Melo v. Hafer,* 912 F.2d 628, 633 (3d Cir.1990), *aff'd on other grounds sub nom., Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ashe v. Corley,* 992 F.2d 540, 544 (5th Cir. 1993); *see also* 10A Wright, Miller & Kane *Federal Practice and Procedure* § 2722, at 46 (2d ed.1983). The court must therefore determine whether, accepting as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, no relief can be granted under any set of facts that could be proved. *Melo,* 912 F.2d at 634. Count Three of the Complaint, which alleges a violation of § 1983, merely paraphrases the language of the statute. (Compl. at ¶ 78.) Nor does plaintiff allege a violation of federal constitutional or statutory law anywhere else in the Complaint. Section 1983 does not itself provide any substantive rights, and a claim under the statute must be grounded on a violation of the United States Constitution or some other federal law. *Piecknick,* 36 F.3d at 1255–56. Plaintiff has twice moved to amend the Complaint and has yet to allege a violation of his federal rights. Because the Complaint is entirely lacking allegations of a violation of plaintiff's federal constitutional or statutory rights, the court will dismiss his § 1983 claim.

▮ The court also concludes that plaintiff should not be granted leave to amend the Complaint to allege a violation of his federal rights. Both parties have treated this motion as one for summary judgment, and plaintiff has had ample opportunity to come forward with evidence to support his § 1983 claim. This evidence, however, when viewed in the light most favorable to plaintiff, does not establish a constitutional violation.

Remarkably, even after having filed two memoranda in opposition to the Cherry Hill Defendants' motion, plaintiff has still failed to identify a single federal constitutional or statutory provision that provides the basis for his § 1983 cause of action. Nevertheless, it is apparent from his papers that plaintiff is asserting a violation of his procedural due process rights under the Fourteenth Amend-

ment. (Pl. Mem. in Opp'n to Cherry Hill Defs.3d Motion for Summ. J. at 5.) Specifically, plaintiff argues that he was deprived of a constitutionally protected property interest in his continued employment with the Police Department without the benefit of a hearing. *Id.; see Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

The Cherry Hill Defendants do not dispute, for purposes of this motion, that plaintiff would have been entitled to a hearing had he been terminated. They argue, however, that by voluntarily resigning from the Police Department plaintiff relinquished his property interest in continued employment and therefore cannot establish that he was deprived of it within the meaning of the due process clause. *Hargray v. City of Hallandale,* 57 F.3d 1560, 1567 (11th Cir.1995). Plaintiff's position is that the Cherry Hill Defendants forced his resignation and that he therefore retained his rights under the Fourteenth Amendment.

 Neither the Supreme Court nor the Third Circuit have identified the circumstances under which a resignation will be deemed involuntary for purposes of the due process clause. A review of the relevant cases in other circuits indicates that a resignation is initially presumed voluntary. *Hargray v. City of Hallandale,* 57 F.3d 1560, 1568 (11th Cir.1995); *Angarita v. St. Louis County,* 981 F.2d 1537, 1544 (8th Cir.1992); *Alvarado v. Picur,* 859 F.2d 448, 453 (7th Cir.1988); *Stone v. University of Maryland Med. Sys. Corp.,* 855 F.2d 167, 174 (4th Cir. 1988); *Lahaza v. Azeff,* 790 F.Supp. 88, 91 (E.D.Pa.1992). There are generally two situations in which a resignation will be deemed involuntary, and thus a deprivation of due process: (1) where the employer forces the resignation by coercion or duress; or (2) where the employer obtains the resignation by deceiving or misrepresenting a material

fact to the employee. *Hargray,* 57 F.3d at 1568; *Stone,* 855 F.2d at 174. Plaintiff has not produced sufficient evidence that would allow reasonable jurors to infer that his resignation was involuntary under either of these theories, and the Cherry Hill defendants would therefore be entitled to summary judgment.

There is no dispute that plaintiff's involvement in the Zanetich incident, which plaintiff has admitted, precipitated an investigation of his conduct by both the Police Department and the Prosecutor's Office and eventually led to plaintiff's resignation. During the course of these investigations and leading up to his resignation, plaintiff was represented by counsel, who negotiated with the Prosecutor's Office and the Police Department the circumstances under which plaintiff would tender his resignation. Under the agreement ultimately reached, plaintiff would resign from the Police Department and testify before the grand jury investigating the Zanetich incident; in exchange, the Prosecutor's Office would not bring criminal charges against him.[7] Pursuant to this agreement and on the advice of his attorney, plaintiff resigned on May 11, 1995. He later testified before the grand jury, though he himself was never charged with any crimes.

Plaintiff offers only one remotely viable theory as to how the Cherry Hill Defendants "forced" his resignation. Plaintiff argues that he was coerced or misled into resigning because there was no basis for potential criminal charges against him. (Pl. Mem. in Opp'n to Cherry Hill Defs.3d Motion for Summ. J. at 4, 7.) This argument only implicates the Cherry Hill Defendants to the extent that they conspired with, or pressured, the Prosecutor's Office to mislead plaintiff and his attorney about the nature of the potential charges against him. If the Prosecutor's Office acted independently, or if the grounds for the criminal investigation were

---

7. Plaintiff argues that no such agreement was ever reached and that plaintiff did "stand and face indictment." (Pl. Cross–Motion for Summ. J. Reply Mem. at 6.) This argument of plaintiff's counsel is unsupported by the evidence and is in fact contradicted by the great weight of evidence, including plaintiff's own deposition testimony, (Boody Dep. at 166), letters between the Prosecu-

tor's Office and plaintiff's attorney, (Pl. Mem. in Opp'n to Cherry Hill Defs.3d Motion for Summ. J., Ex. M), the deposition testimony of Ottenberg, (*Id.,* Ex. M at 34, 44), and arguments made by William Mitchell's attorney in an effort to have the grand jury indictment of his client dismissed, (Pl. Cross–Motion for Summ. J. Reply Mem., Ex. K at 4).

sound, then plaintiff's resignation to avoid facing potential criminal charges could not have been forced.

Public officials are ordinarily entitled to a presumption that they have discharged their official duties with honesty, integrity, and regularity. *Bracy v. Gramley*, 520 U.S. 899, ——, 117 S.Ct. 1793, 1799, 138 L.Ed.2d 97 (1997); *Cacy v. City of Chickasha*, 1997 WL 537864, at *5–6 (10th Cir. Sept. 2, 1997). Plaintiff offers only speculation to rebut this presumption and to establish that defendants Borden and Ottenberg, the public officials in this case, conspired with the Cherry Hill Police Department to force his resignation absent probable cause to believe he committed a crime. Plaintiff points to a memo from Ottenberg to Borden, written during the investigation, which states that the Police Department wanted them to "go to the Grand Jury ... A.S.A.P.," (Pl. Mem. in Opp'n to Cherry Hill Defs. 3d Motion for Summ. J., Ex. G), and a statement from plaintiff's father that Ottenberg told him that the decision "to stay with a grand jury indictment ... was emanating from the Cherry Hill Police department," (*id.*, Ex. H).

The court does not find plaintiff's evidence sufficient to rebut the presumption that the Prosecutor's Office acted independently of the Police Department and had a sound basis for its criminal investigation, in the face of overwhelming evidence of plaintiff's culpability in the underlying criminal conduct. Plaintiff has admitted his involvement in the incident that provided the basis for the criminal investigation. Though plaintiff was never charged for his involvement on account of the resignation agreement, the incident led to the indictment and guilty plea of another participant, William Mitchell. (Pl. Mem. in Opp'n to Cherry Hill Defs. 3d Motion for Summ. J. at 6.) Plaintiff makes no attempt to demonstrate that the charge against Mitchell was groundless. Plaintiff would have the court believe that the conspiracy to force his resignation was so broad that the Prosecutor's Office was willing not only to fabricate charges against him, but against an innocent Mitchell as well. The court cannot accept this without any supporting evidence. The facts allow only one conclusion: plaintiff was faced with a choice of resigning or facing potential criminal charges. On the advice of his attorney, he chose to resign, and thus relinquished his right to continued employment and any procedural protections that go with it. The mere fact that plaintiff was faced with a choice between comparably unpleasant alternatives—e.g., resignation or facing criminal charges—does not establish that his resignation was involuntary. *Hargray*, 57 F.3d at 1568; *Parker*, 981 F.2d at 1162; *Stone*, 855 F.2d at 174. Thus, even if plaintiff were granted leave to amend his Complaint to allege a constitutional violation, the Cherry Hill Defendants would still be entitled to summary judgment.[8] Plaintiff's § 1983 claim is therefore dismissed with prejudice.[9]

### 4. *Plaintiff's Second Motion to Amend*

Plaintiff has moved to amend the Complaint to include defendant Stein in the wherefore clauses of the Complaint. (Pl. 2d Motion to Amend the Compl. at 3.) Leave to amend a pleading is "freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend may be denied, however, where there is "undue delay, bad faith or dilatory

---

**8.** In response to the Cherry Hill Defendants' motion, plaintiff cross-moved for partial summary judgment on the issues of his property interest in continued employment, qualified immunity of the individual defendants, and Moffett's final policy-making authority. (Pl. Mem. in Opp'n to Cherry Hill Defs. 3d Motion for Summ. J. at 5, 8, 11.) Because plaintiff did not properly file this cross-motion with the Clerk of the Court, it does not appear on the docket. This procedural deficiency need not be corrected, as the court's disposition of the Cherry Hill Defendants' motion renders plaintiff's cross-motion moot. In other words, plaintiff's cross-motion on these grounds cannot succeed because his underlying § 1983

claim, when deemed to have been asserted as a claim for denial of due process and when viewed in the light most favorable to plaintiff, cannot succeed.

**9.** The Cherry Hill Defendants also moved for partial summary judgment on plaintiff's common law claims on the ground that plaintiff failed to comply with the notice provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:8–3 (West 1992 & Supp.1997). (Cherry Hill Defs. 1st Motion for Summ. J.) In light of the court's dismissal of all claims against the Cherry Hill Defendants, this motion will be dismissed as moot.

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Permitting plaintiff to amend the Complaint would be futile because the grounds upon which the court dismissed all of plaintiff's claims against the Cherry Hill Defendants are equally applicable to defendant Stein, whether or not he is named in the wherefore clauses of the Complaint. Plaintiff's second motion to amend the Complaint is therefore denied.

### C. *The Camden Defendants*

The Camden Defendants are named only in Counts Five, Six, Eight, Nine, and Ten, which assert state common law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, harassment, and interference with contract of employment, respectively. None of the Camden Defendants is named in the § 1983 claim, which provides the basis for this court's jurisdiction, and the claims against these defendants would only properly be before the court by exercise of its supplemental ("pendent party") jurisdiction. *See* 28 U.S.C. § 1367(a). Now that the § 1983 claim has been dismissed, the court will decline to exercise its supplemental jurisdiction over the remaining state law claims against the Camden Defendants. 28 U.S.C. § 1367(c)(3).

The Court of Appeals for the Third Circuit has stated that when determining whether to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Delaware County, PA.*, 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). A federal court should avoid needless decisions of state law both as a matter of comity and to promote justice between the parties. If the federal claims are dismissed prior to trial, even though not insubstantial in a jurisdictional sense, the non-federal claims should be likewise dismissed. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) (citing *United Mine Workers*, 383 U.S. at 726–27).

Because the court is dismissing the federal claims at the motion to dismiss and summary judgment stage, the court finds no overarching interest of judicial economy or convenience in preserving state claims against other defendants. Nor is there any apparent unfairness in dismissal, without prejudice, of the non-federal claims against the Camden Defendants. The court, in the exercise of its discretion under 28 U.S.C. § 1367(c)(3), will accordingly "decline to exercise supplemental jurisdiction" over the plaintiff's remaining claims against the Camden Defendants because the court has dismissed all claims over which it had original jurisdiction as well as the related state law claims against the only defendants named in plaintiff's § 1983 claim.[10]

10. While the court has exercised pendent claim jurisdiction under § 1367 as to all parties named in plaintiff's federal claim, the court declines to exercise pendent party jurisdiction over claims against parties named only in the state law counts, for several additional reasons. Section 1367(c) permits district courts to decline to exercise the supplemental jurisdiction that may otherwise exist under § 1367(a) on a claim by claim basis, since the statutory text of § 1367(c) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" if one of the four reasons in § 1367(c)(1)–(4) is present for that claim. This suggests that the exercise of supplemental jurisdiction is not an all-or-nothing proposition if good reason exists to distinguish some supplemental claims from others. Supplemental jurisdiction may be declined where the claim raises complex issues of state law, § 1367(c)(1), as in the present case regarding claims against the Camden Defendants, while, in contrast, the state claims against the Cherry Hill Defendants could all be resolved by applying well-settled principles of CEPA law to this case. Further, the fact that the court granted summary judgment upon the sole federal claim over which it had original jurisdiction indicates that it should not exercise jurisdiction over the Camden Defendants, who have not been named in the federal claim, *see* § 1367(c)(3). While the exercise of supplemental jurisdiction over the Cherry Hill Defendants is justified by the § 1983 claim against them and the simple dispositive issue of CEPA law, the exercise of jurisdiction is declined as to claims against the Camden Defendants who are before

The claims against Camden Defendants in Counts Five, Six, Eight, Nine, and Ten are therefore dismissed for lack of supplemental jurisdiction. Count Eleven is also dismissed as to Camden County and the Prosecutor's Office to the extent that it seeks to hold them liable for the state law violations of their employees, Borden and Ottenberg, under the doctrine of *respondeat superior*, for lack of supplemental jurisdiction.

### D. *Plaintiff's First Motion to Amend*

Plaintiff has moved to amend the Complaint to include the Camden Defendants in each count. (Pl. 1st Motion to Amend the Compl. at 2.) The court need only address this motion to the extent that it seeks to add the Camden Defendants to Count Three, which alleges the only violation of federal law, because allowing such an amendment would preclude the court's dismissal of the state law claims against these defendants for lack of supplemental jurisdiction.

The court will deny plaintiff's motion as futile because it would remain subject to dismissal for the same reasons that the court dismissed the § 1983 claim against the Cherry Hill Defendants. Neither of plaintiff's two proposed amended complaints allege a violation of his federal rights. Moreover, in responding to the Cherry Hill Defendants' motion, plaintiff failed to come forward with evidence that would support a finding that the Camden Defendants acted improperly in conducting their investigation of plaintiff's involvement in the Zanetich incident. This failure would preclude a § 1983 claim against the Camden Defendants either for conspiring with the Cherry Hill Defendants to force plaintiff's resignation or for malicious prosecution. Plaintiff's first motion to amend the Complaint is therefore denied.[11]

### E. *Plaintiff's Appeal of the Magistrate's Order*

Plaintiff has also appealed an Order of Magistrate Judge Robert B. Kugler, dated September 12, 1997, in which Judge Kugler

denied plaintiff's motion to compel the production of the Police Department's payroll records and portions of Lt. Stein's synopsis of his Internal Affairs investigation of the Zanetich incident. Although no claims remain to be adjudicated, the court addresses this discovery issue for the sake of completeness. The court will affirm Judge Kugler's Order in its entirety.

The order under review is a non-dispositive order issued by a Magistrate. This court has jurisdiction over an appeal from such an order under Fed.R.Civ.P. 72(a) and District of New Jersey General Rule 40D.4(a), recodified as L. Civ. R. 72.1(c)(1) (eff. April 1, 1997). Under these rules, a District Judge shall consider the appeal and set aside any portion of the Magistrate's order found to be clearly erroneous or contrary to law. *Curley v. Cumberland Farms Dairy, Inc.*, 728 F.Supp. 1123, 1141 (D.N.J. 1989); *Berel Co. v. Sencit F/G McKinley Assocs.*, 125 F.R.D. 100, 102 (D.N.J.1989); *Canadian Imperial Bank of Commerce v. Boardwalk Regency Corp.*, 108 F.R.D. 737, 739 (D.N.J.1986). A ruling is "clearly erroneous" when, "although there is evidence to support it, the reviewing Court is left with a definite and firm conviction that a mistake has been committed." *South Seas Catamaran, Inc. v. Motor Vessel Leeway*, 120 F.R.D. 17, 21 (D.N.J.1988), *aff'd*, 993 F.2d 878, 1993 WL 146934 (3d Cir.1993). District judges are to give particularly broad deference to a magistrate judge's discovery rulings. *See Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 53 (D.N.J.1994); *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 386–87 (D.N.J.1990), *aff'd*, 949 F.2d 653 (3d Cir.1991).

The basis for Judge Kugler's rulings appears in the transcript of oral argument upon the underlying discovery motion on September 11, 1997 (hereinafter cited as "Tr."), which has been carefully considered.

### 1. *The Payroll Records*

█ Plaintiff sought to compel the production of the Police Department's payroll

---

this court solely based on state law issues of myriad variety not governed by CEPA.

11. The court's dismissal of all claims against the Camden Defendants renders their two motions for summary judgment moot, and the court will dismiss them.

records because these documents allegedly establish the magnitude of the "ticket reward system." Plaintiff argues that the scale of the alleged fraud is relevant to his retaliation claims because it provides defendants with a motive to force his resignation. Judge Kugler denied plaintiff's motion under Fed. R.Civ.P. 26(b)(2) on the ground that production of the payroll records would be unreasonably cumulative and burdensome in light of their limited relevance to plaintiff's claims. (Tr. at 27.) He further determined that nothing in the CEPA statute suggests that the actual value of the alleged fraud is relevant to the required elements of a CEPA cause of action. (*Id.*) Plaintiff contends that this decision was clearly erroneous because the records are more than "marginally relevant" to his retaliation claims. (Pl.App. Br. at 1.) Defendants, however, have conceded the existence of the "ticket reward system" and have already produced documents consistent with this admission. (Tr. at 25.) In light of defendants' admission and their production of similar documents, Judge Kugler properly balanced the cumulative and burdensome nature of plaintiff's discovery request against its likely benefit under Fed. R.Civ.P. 26(b)(2), and his conclusion regarding this discovery matter is entitled to broad deference. *See Toth,* 158 F.R.D. at 53. The court will therefore affirm Judge Kugler's Order denying plaintiff's motion to compel discovery of the Police Department's payroll records.

#### 2. *Stein's Investigative Report*

■ Plaintiff also sought to compel production of defendant Stein's entire synopsis of his Internal Affairs investigation of the Zanetich incident. Judge Kugler ordered the release of the entire report, save Stein's personal recommendations in the last paragraph. (Tr. at 35.) Judge Kugler found that while Stein's recitation of the facts was discoverable, his evaluation of the facts and his recommendations were privileged. (Tr. at 33–35.) *See Torres v. Kuzniasz,* 936 F.Supp. 1201, 1209–12 (D.N.J.1996); *G–69 v. Degnan,* 130 F.R.D. 339, 348 (D.N.J.1990). Judge Kugler recognized that under New Jersey law the need for self-critical analysis does not give rise to a *per se* privilege, but the court

must balance the need for confidentiality of conclusions and analysis and the need for disclosure in the particular circumstances of the case, citing *Payton v. New Jersey Turnpike Authority,* 148 N.J. 524, 544–48, 691 A.2d 321 (1997).

On appeal, plaintiff argues that the redacted portion of the report is relevant to his case, but does not address Judge Kugler's finding of privilege as to the redacted materials revealing conclusions and internal analysis. (Pl.App. Mem. at 4.) Plaintiff thus provides no basis for this court to reverse Judge Kugler's decision as clearly erroneous or contrary to law, and the partial redaction is well within Judge Kugler's discretion. Judge Kugler's Order of September 12, 1997, is therefore affirmed in its entirely.

### III. *Conclusion*

For the foregoing reasons, the court will grant the Cherry Hill Defendants' motion for summary judgment on plaintiff's CEPA claim in Count One of the Complaint and will dismiss the remaining state law claims against them as barred by the CEPA waiver provision. The court will also grant the Cherry Hill Defendants' motion to dismiss plaintiff's § 1983 claim, with prejudice, and will dismiss the remaining claims against the Camden Defendants, without prejudice, for lack of supplemental jurisdiction. In addition, plaintiff's two motions to amend the original Complaint are denied, and Judge Kugler's Order dated September 12, 1997, is affirmed in its entirety.

Thus, all claims by plaintiff Michael Boody against all parties have been dismissed.

The accompanying Order is entered.

### ORDER

This matter having been brought before the court upon the motions of the parties; and the court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

It is this 18th day of December, 1997 hereby

ORDERED that the motion of defendants Township of Cherry Hill, Cherry Hill Police Department, William Moffett, and George

Stein, Lt., (Docket Item ("D.I.") 30–1), for summary judgment on Count One of the Complaint, asserting a claim under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19–1 *et seq.*, be, and hereby is, *GRANTED*; and it is

FURTHER ORDERED that the motion of defendants Township of Cherry Hill, Cherry Hill Police Department, William Moffett, and George Stein, Lt., (D.I.30–1), to dismiss the remaining state law claims against them in Counts Two and Four through Eleven of the Complaint, be, and hereby is, *GRANTED*; and it is

FURTHER ORDERED that the motion of defendants Township of Cherry Hill, Cherry Hill Police Department, William Moffett, and George Stein, Lt., (D.I.44–1), to dismiss Count Three of the Complaint, asserting a claim under 42 U.S.C. § 1983, be, and hereby is, *GRANTED*, with prejudice; and it is

FURTHER ORDERED that the motion of defendants Township of Cherry Hill, Cherry Hill Police Department, William Moffett, and George Stein, Lt., (D.I.20–1), for partial summary judgment be, and hereby is, *DISMISSED*; and it is

FURTHER ORDERED that plaintiff's first motion to amend the Complaint, (D.I.16–1), be, and hereby is, *DENIED*; and it is

FURTHER ORDERED that plaintiff's second motion to amend the Complaint, (D.I.33–1), be, and hereby is, *DENIED*; and it is

FURTHER ORDERED that all remaining claims against defendants Camden County Board of Chosen Freeholders, Office of the Camden County Prosecutor, Edward Borden, and Josh Ottenberg be, and hereby are, *DISMISSED* for lack of supplemental jurisdiction, without prejudice; and it is

FURTHER ORDERED that the motions of defendants Camden County Board of Chosen Freeholders, Office of the Camden County Prosecutor, Edward Borden, and Josh Ottenberg (D.Is. 13–1 & 46–1), be, and hereby are, *DISMISSED* as moot; and it is

FURTHER ORDERED that Magistrate Judge Robert B. Kugler's Order dated Sep-

tember 12, 1997, be, and hereby is, *AF-FIRMED.*