

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2005

# Garden State Elec v. Bass

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4448

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Garden State Elec v. Bass" (2005). *2005 Decisions.* Paper 727.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/727

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4448
_____

GARDEN STATE ELECTRICAL
INSPECTION SERVICES INC.,
Appellant

v.

SUSAN BASS LEVIN, in her capacity as
Commissioner, State of New Jersey,
Department of Community Affairs,
Bureau of Regulatory Affairs; JOHN DOES, 1-10
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-04435)
District Judge:  Honorable Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
June 29, 2005

Before:  ROTH, RENDELL and BARRY, Circuit Judges.

(Filed:  August 5, 2005)
_____

OPINION OF THE COURT
_____

1

RENDELL, Circuit Judge.

Garden State Electrical Inspection Services, Inc. ("Garden State") appeals the District Court's order granting the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The District Court determined that Garden State's damages claims were barred by the Eleventh Amendment and that Garden State could not state a claim for relief under the Equal Protection Clause of the Fourteenth Amendment. We will affirm the judgment of the District Court.

I.

Because we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to this appeal. The State Uniform Construction Code ("Code") establishes uniform construction standards and enforcement policies for the State of New Jersey in specific areas such as plumbing, electrical, building, and fire prevention. The Code authorizes the State Department of Community Affairs ("DCA") or individual municipalities to perform subcode enforcement. N.J. Admin. Code tit. 5, § 23-4.3. A municipality may choose to enforce the Code by: (a) establishing its own agency; (b) forming an Interlocal Enforcing Agency with other municipalities; or (c) contracting licensed third-party agencies, called "on-site inspection agencies." Id. §§ 23-4.3, 23-4.6, 23-4.12(a). Under the Code, Garden State is licensed as a private on-site inspection agency.

Garden State's Amended Complaint alleged that the Commissioner failed to

2

enforce certain Code provisions, which, Garden State claims, restrict municipal subcode officials to employment by no more than two municipalities.[1]  See id. § 23-4.12(h). Garden State contends that municipal officials performing subcode enforcement functions for multiple municipalities should be subject to the bidding procedures and authorization fees required of on-site inspection agencies because the officers are operating as de facto on-site inspection agencies.[2]  Garden State pointed to two specific Code provisions that, it argues, restrict municipally-employed subcode officials from performing enforcement functions for no more than two municipalities.  The first provision, Section 23-4.4(c), sets forth the times that subcode officials must be available for consultation and the times they must conduct inspections.[3]  The second provision, Section 23-4.12(h)(2), provides that: "A person shall not be deemed to be a bona fide municipal employee if he holds two or

---

[1]Garden State alleges that the Commissioner has improperly allowed municipal subcode officials to perform enforcement functions simultaneously for as many as eight different municipalities, with a total of 194 officials performing enforcement functions simultaneously for three or more municipalities.

[2] See N.J. Admin. Code tit. 5, § 23-4.21 (outlining authorization fees for private on-site inspection agencies); see also id. § 23-4.5A (outlining the bidding requirements for on-site inspection agencies).  Municipal employees are not subject to bidding requirements or authorization fees.  In order to be deemed a "bona fide municipal employee" under the Code, "such person shall receive no compensation for his service other than a fixed salary or hourly wage," and must not hold "two or more jobs which are determined by the [DCA] to be incompatible by reason of conflicting time requirements."  Id. § 23-4.12(h).

[3] The subcode officials must be "available for consultation and discussion during normal business hours at scheduled times to be determined by the construction official.  All inspections shall take place between 9:00 A.M. and 5:00 P.M. on business days or while construction is taking place . . . or with the permission of the owner or his representative."  N.J. Admin Code tit. 5, § 23-4.4(c).

3

more jobs which are determined by the department to be incompatible by reason of conflicting time requirements." According to Garden State, the failure to properly enforce the Code violates its equal protection rights under the Fourteenth Amendment and places Garden State at a competitive disadvantage, causing it economic harm.

Garden State filed its Initial Complaint against the DCA. The Initial Complaint alleged that the DCA's improper enforcement of the Code, N.J. Admin. Code tit. 5, § 23, violated the Equal Protection Clause of the Fourteenth Amendment. The DCA filed a motion to dismiss, contending that the Eleventh Amendment barred Garden State's claim. Garden State filed an Amended Complaint asserting the same claims under 42 U.S.C. § 1983 against the Commissioner of the DCA and ten unidentified DCA officials. Garden State sought damages, declaratory relief, and injunctive relief.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

## III.

Civil liability may be imposed under 42 U.S.C. § 1983 upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges,

or immunities secured by the Constitution or laws of the United States." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). To establish a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. Id.

As a threshold matter, we agree with the District Court's conclusion that Garden State seeks to recover from the Commissioner in her official capacity and therefore the Eleventh Amendment bars Garden State's § 1983 claims for damages. The Eleventh Amendment has been interpreted to render states generally immune from suit by private parties in federal court. Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002). Eleventh Amendment immunity extends to the state's agencies or departments, provided that the state is the real party interest. MCI Telecomm. Corp. v. Bell Atlantic-Pa. Serv., 271 F.3d 491, 503 (3d Cir. 2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984). The Eleventh Amendment also bars a suit against a state official in his or her official capacity because it "is not a suit against the official but rather is a suit against the official's office. As such it is it is no different from a suit against the State itself." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).

The Eleventh Amendment does not, however, bar suits for damages against government officials sued in their personal capacities. In personal capacity suits, a plaintiff seeks to impose personal liability upon an individual officer and recover from the

5

personal assets of that officer. Therefore, the Eleventh Amendment is not implicated because the State is not the real party in interest. Kentucky v. Graham, 473 U.S. 159, 165 (1985). In Will, the Supreme Court emphasized that the distinction between personal and official capacity suits is more than "a mere pleading device." 491 U.S. at 71. State officers sued for damages in their official capacities are not "persons" under § 1983 because they assume the identity of the government that employs them. See Hafer v. Melo, 502 U.S. 21, 27 (1991). By contrast, officers sued in their personal capacities come to court as individuals. Id. Government officials sued in their personal capacities thus are "persons" under § 1983. Id.

Although the Amended Complaint did not specify whether Garden State sought to recover from the Commissioner in her official or personal capacity, the District Court properly construed Garden State's complaint as an official capacity suit. In determining whether Garden State sued the Commissioner in her official capacity, personal capacity, or both, we look at the complaints and the "course of proceedings" to determine the nature of the liability Garden State sought to impose. Graham, 473 U.S. at 167 n.14 (quoting Brandon v. Holt, 469 U.S. 464, 469 (1985)). In Melo v. Hafer, 912 F.2d 628 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991), we applied the "course of pleadings" test to ascertain whether a government official was sued in her personal or official capacity. We determined that the plaintiffs meant to sue the official in her personal capacity for two reasons. First, the complaints only listed the official, not the State, as a defendant and

6

thus the plaintiffs manifested that they only sought to recover from the official, not the State. Melo, 912 F.2d at 636. Second, the official asserted the qualified immunity defense throughout the course of the proceedings. This defense is only available when government officials are sued in their personal, not official, capacity. Id. We determined that in raising this defense, the official "understood that plaintiffs sought to sue her in her personal capacity." Id.

Applying the "course of pleadings" test to this case, we find that Garden State sued the Commissioner in her official capacity and not her personal capacity. First, Garden State's Initial Complaint sought damages from the DCA, not the Commissioner. The DCA is a principal department "established in the Executive Branch of the State Government." N.J. Stat. Ann. § 52:27D-1. By suing the DCA, a "principal department" of the Government of New Jersey, Garden State clearly sought damages from a State agency and the Eleventh Amendment bars such recovery. In the Amended Complaint, Garden State virtually substituted the name of the Commissioner and ten unnamed individuals for that of the DCA into what is otherwise substantially the Initial Complaint. Garden State did not aver any particularized allegations or facts which suggest that the Commissioner or any of the unnamed defendants had any personal involvement in the alleged selective and improper enforcement of the Code. Furthermore, unlike the official in Melo, the Commissioner did not respond to Garden State's Amended Complaint in a manner that shows she understood that the suit was against her in her personal capacity.

7

In response to the Amended Complaint, the Commissioner did not attempt to raise any personal immunity defense, such as qualified immunity, that is available in personal capacity suits.

Given the Initial Complaint, Amended Complaint, and "course of pleadings," the District Court's conclusion that the Amended Complaint is an attempt by Garden State to avoid the Eleventh Amendment by masquerading claims for damages against a principal department of the State (i.e., the DCA) as claims against the Commissioner was correct. As such, the District Court correctly determined that Garden State sued the Commissioner in her official capacity and the Eleventh Amendment bars Garden State's claims for damages.

There are three primary exceptions to Eleventh Amendment immunity: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.[4] Hess, 297 F.3d at 323. The only exception to Eleventh Amendment immunity that could apply here is the third, which could potentially permit Garden State's claims for prospective injunctive and declaratory relief against the Commissioner in her official capacity. However, as we will explain, Garden State cannot state a claim under

_____

[4]The exception for claims of prospective declaratory or injunctive relief is known as the Ex Parte Young exception. See Ex Parte Young, 209 U.S. 123 (1908). The relief sought must be prospective, declaratory, or injunctive and cannot be retrospective, such as monetary damages. Hess, 297 F.3d at 323.

8

the Equal Protection Clause of the Fourteenth Amendment upon which relief, prospective or otherwise, can be granted.

The District Court properly dismissed Garden State's claims for prospective injunctive and declaratory relief pursuant to Fed. R. Civ. P. 12(b)(6). Garden State cannot state an equal protection claim because Garden State cannot demonstrate that: (1) the Commissioner is improperly enforcing the Code, (2) on-site inspection agencies and municipal subcode officials are similarly situated under the Code and should be treated alike, and (3) the classifications within the Code are not rationally related to a legitimate State interest.

The Equal Protection Clause of the Fourteenth Amendment declares that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amd. XIV § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). In Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), the Supreme Court explained that "the Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Classifications that do not implicate a suspect class or fundamental right are valid if they are rationally related to a legitimate State interest. Cleburne, 473 U.S. at 440.

First, the District Court was correct in its conclusion that the Commissioner is not

9

improperly enforcing the Code. In support of the argument that the Commissioner is denying Garden State its Fourteenth Amendment rights by improperly enforcing the Code, Garden State cites two Code provisions that it claims bar municipal subcode employees from performing inspections for multiple municipalities. The first provision, Section 23-4.4(c), provides that municipal subcode officials should be available for consultation "during normal business hours at scheduled times to be determined by the construction official." The second provision, Section 23-4.12(h), provides that: "A person shall not be deemed to be a bona fide municipal employee if he holds two or more jobs which are determined by the department to be incompatible by reason of conflicting time requirements." Based on a plain reading of the Code, it is clear that the Code does not contain a restriction that prevents municipally-employed subcode officials from performing inspections for multiple municipalities. According to the Code, a municipally-employed inspector would have to register as an on-site inspection agency only if: (1) he or she receives a fee other than his or her fixed salary or hourly wage for conducting inspections, or (2) if the employee holds two or more jobs which the department determines are incompatible by reason of conflicting time requirements. Garden State does not contend that the municipal employees performing inspections for multiple municipalities have voided their "bona fide municipal employee" status by receiving compensation other than their fixed salary or wage. Moreover, the Code provides no provision that equates employees performing inspections for more than two

10

municipalities with employees holding two or more "jobs" that are incompatible due to conflicting time requirements.

Additionally, as the District Court noted, the Code's framework provides the DCA and municipalities with flexibility in their administration and enforcement of the Code. Under Section 23-4.6(a), municipalities may form "interlocal enforcing agencies" to jointly administer and enforce the subcodes. The Code establishes that subcode officials do not have to work "exclusively for the enforcing agency, or . . . be located in one office or building within the municipality." Id. § 23-4.3(d)(3). Furthermore, the Code provides that municipalities can reorganize "to provide for the coordination of dispersed personnel." Id. The District Court properly concluded that the only restrictions provided by the Code are: (1) that the public shall have the right to do business at one enforcing agency center and (2) that subcode officials must be available for consultation during normal business hours. Id. There is simply no restriction that municipal subcode officials cannot perform inspections for more than two municipalities. To the contrary, the Code encourages municipalities to reorganize, to work with other municipalities to form interlocal enforcing agencies, or to hire licensed, private on-site inspection agencies (like Garden State) in order to meet the requirements set forth in the statute. In permitting municipally-employed inspectors to perform inspections for multiple municipalities, the Commissioner is enforcing the Code as it is written. The District Court was correct in its conclusion that the Commissioner is not improperly enforcing the Code.

Second, the District Court properly concluded that Garden State failed to establish that municipal subcode officials performing inspections for multiple municipalities are similarly situated for purposes of the Equal Protection Clause. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Cleburne, 473 U.S. at 440. Persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects." Nordlinger, 505 U.S. at 10. The Code makes distinctions between on-site inspectors and municipally-employed inspectors. Under the Code, municipally-employed inspectors are employees of the State who are paid a fixed salary, whereas on-site inspection agencies are private entities paid on a fee basis. On-site inspection agencies are subject to bidding requirements and authorization fees while municipal employees are not. As discussed above, the Code provides two situations where municipal employees void their status as "bona fide" employees: (1) where they receive a fee for inspections other than their fixed salary or (2) when employees hold two or more jobs which the department determines have different time commitments. Neither of those situations has occurred in this case. Moreover, as noted in the District Court's opinion, Garden State does not contend that municipal subcode officials have participated in the bidding process with Garden State, thereby competing with Garden State and other on-site inspection agencies. Because they do not operate in the same manner, are not licensed and authorized in the same manner, and are not paid in the same manner, municipal employees and on-site inspection

12

agencies are not alike in all relevant aspects and need not be treated alike. Thus, the District Court was correct in its conclusion that on-site inspection agencies and municipal employees performing inspections for multiple municipalities are not similarly situated for purposes of the Equal Protection Clause.

Third, the classifications within the Code between public, municipally-employed inspectors and private, on-site inspection agencies are not invalid because they are rationally related to a legitimate State interest. Under the Equal Protection Clause, classifications that do not implicate a suspect class or fundamental right will be deemed valid if they are rationally related to a legitimate State interest. Romer v. Evans, 517 U.S. 620, 631 (1996). Rational basis review is very deferential and "a law will be sustained . . . even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Id. at 632. As discussed above, private on-site inspection agencies must be licensed, pay authorization and re-authorization fees, participate in specialized bidding requirements, and work on a fee basis. Municipally-employed inspectors are paid a fixed salary, do not have the same bidding requirements that private agencies do, and are not subject to authorization and re-authorization fees. These classifications do not implicate a suspect class, such as race, nor do they implicate a fundamental constitutional right. Therefore, they only need to be rationally related to a legitimate State interest. Here, the State has a legitimate interest in imposing licensing requirements on private subcode inspectors, whereas licensing public employees would

13

be superfluous.  The classifications within the Code between municipally-employed inspectors and private on-site inspection agencies are rationally related to this State interest and, therefore, the Code itself does not violate the Fourteenth Amendment.

IV.

The District Court properly concluded that Garden State's damages claims are barred by the Eleventh Amendment and that the Complaint must be dismissed because Garden State cannot establish that the Commissioner's actions denied Garden State equal protection of the law as guaranteed by the Fourteenth Amendment.

Accordingly, we will AFFIRM.